Good morning, Your Honor. I'm Chris Urban for Petitioner V. R. Mazzamora. With the Court's permission, I'd like to reserve three minutes for rebuttal. Sure. Thank you. May it please the Court. Members, this is a case about a pro se alien's testimonial admissions in response to I.J. questioning regarding the factual underpinnings for the charges in the notice to appear in which three things were absent. One is a contemporaneous explanation of the alien's rights, the government's statutory burden of proof, and the potential effect of testimonial admissions. The second is an express concession of removability as a matter of law, which is required by ACFR 1240.10c, the governing regulation here. And the third is any other, any documentary evidence of any kind, substantiating the charges in the NTA here. All we have are the alien's flawed and poorly informed responses to I.J.'s questioning. What does Perez Mejia do to you? It really doesn't control this case. It really, this case presents an opportunity to clarify the scope of Perez Mejia inasmuch as Perez Mejia was represented by counsel. The concessions and responses to the NTA charges were clearly part of a tactical strategy, both to collaterally attack the judgment in that case and later to seek waiver of removability. Well, that option was offered to your client, was it not? But he later chose not to ask for it. He was offered the opportunity to seek cancellation of removal. So had he pursued that, then the strategy would have been the same that Perez Mejia was pursuing, correct? Had he been represented by counsel and made his concessions with the intent, with the obvious intent, to proceed immediately to the relief phase, Perez Mejia would be much more useful and informative in this case. Well, we don't know, do we, that at the initial appearance of Perez Mejia that that decision had been made. We know that he subsequently saw it, but we don't know at that point that he intended to do that, do we? Without having the Perez Mejia record here in front of me, I believe that in the court's opinion, they explained that counsel's concessions and admissions at that initial hearing were made expressly as part of an intent to collaterally attack the underlying criminal judgment. Counsel, let me tell you what my problem is and why I'm having a hard time distinguishing Perez Mejia. The statements that are made by the petitioner at an initial appearance in an immigration proceeding are no different from the statements that are made when we take a plea of guilty in a criminal case from a defendant. They are no different from civil admissions that are made in answering a complaint or filing answers to interrogatory. Why should the rule be different in immigration cases than any other case that we see? In theory, all of that's true. The place that it breaks down here is in the details of how the admissions took place and the context in which they took place. Well, he'd been given a notice to appear in advance of the hearing that clearly set out the five factors that supported removability. He was given an opportunity to go out and hire a lawyer if he wanted to try and get one to represent him. For whatever reason, he didn't appear with counsel. And then the judge went through those five steps, and he admitted and or conceded to each of the five. I don't see how that is any different from a criminal case where the defendant is provided with a copy of the information or the indictment and at a subsequent arraignment on those charges asked, how do you plead? In the criminal context, Your Honor, I mean, there's no doubt that there'd be counsel present. Not necessarily. I mean, we have lots of guilty pleas that are entered particularly in misdemeanor cases, and there are 86,000 of them nationally where there is no lawyer. Correct, Your Honor. I can see that's the case. The difference both in that scenario and, for example, in Perez, Mejia, and in a number of other removability cases, this is what takes place at the hearing in which the plea is taken. Counsel is either present, in which case the IJA confirms with counsel, have you explained the nature of the proceedings to your client? Yes, I have. You've received and read the NTA. Yes, I'm now going to take a pleading to the charges in the NTA. But we have the transcript of the initial telephone video conference in which all that was done prior to the subsequent hearing when these admissions were elicited. Correct. And I just don't see the difference. I mean, you're doing a good job of trying to explain it, but with all due respect, I think they're a distinction without a difference.  In the initial hearing by video conference in Calpatria, the room full of fellow inmates, the IJA goes through the rights, and we can see does a fair job of explaining those rights, the burdens, and the potential effect of testimony. Mr. Zamora is then addressed much later, near the end of that hearing. Two weeks pass before he's called back to actually plead to the charges in the NTA. At no point in that subsequent hearing does the IJA refer to, much less repeat in any substance or form, the explanation of rights that was given earlier. How many times does he have to say it? How many times does he have to tell them? It would have been a passingly simple thing for the IJA. Well, that's not my question whether it was passing or not. My question is how many times does he have to be advised? In this case, immediately before the NTA plea is taken. Why? Because that's the only way with a pro se alien that you can be sure that the alien understands what he's being asked to do. In this case, the plea was taken. There was no reference to the NTA, let alone what he was being asked to plead to or the effect of his admissions. Do we have any reason to believe the admissions were incorrect? I don't know how to answer that question, Your Honor. All we have in the record is what my client answered. Has he ever asserted in a different context that what I said wasn't true? No. So at this point, I'm not sure what difference it makes. I mean, you've emphasized the absence of counsel, the absence of warning, but for what we care about now, what difference does all of that make? It's really a matter of ensuring that these pleadings and that the removability hearings are conducted in a way that provides assurance to the IJ, to the BIA, to this court, to all the parties that the IJ can close that pleadings phase of the removability hearing with a high degree of confidence that there is no remaining issue of factor law and that the admissions that were made were knowing, were well informed. Thank you, Your Honor. You wanted to reserve three minutes in your? I do. Thank you very much, Mr. Durbin. The government. Good morning. Good morning. May it please the Court, Ben Ziland on behalf of the Attorney General. This circuit's recent decision in Perez-Media v. Holder provides direct support for upholding the agency's determination that Mr. Zamora was removable for his controlled substance offense. As this Court articulated during its questioning to Petitioner's Counsel, this Court held that the government in Perez-Media met its burden of proof in a removal proceeding that the alien admits the specific factual allegations contained within the notice to appear. Similar to Mr. Zamora in this case, Perez-Media admitted that he had been convicted of a cocaine-related offense and that admission became legally binding and obviated any need for the government to submit further evidence. Here in this case, Mr. Zamora was served with a notice to appear which specifically detailed his two cocaine-related offenses. During the pleading stage of the proceeding, Mr. Zamora was asked whether or not these allegations were true and he affirmatively stated to the immigration judge that they were. Based upon these legally binding admissions, the immigration judge found Mr. Zamora removable. Because cocaine is a Schedule II controlled substance, it qualifies under the Controlled Substances Act as a controlled substance. Mr. Zamora makes a number of arguments that because he did not concede removability, that would somehow affect or change the decision in Perez-Media. The government just offers a few things in response to that. One, this pleading statute makes clear that an immigration judge need not take as true any pleadings made if he finds that there's a material issue of fact remaining. Therefore, in the pleading stage, the immigration judge listens and can accept the admission, but he'd not accept the admission if there's a material issue remaining. Therefore, if no material issues of fact are remaining, the immigration judge is allowed, as we proceed into either the pleading or the evidentiary stage, to accept those admissions as true and therefore find that those facts create a ground for removability and can sustain that ground of removability that's been charged. As this Court has stated in both Perez-Media as well as in Barragan-Lopez, the government is not obligated to submit any evidence, either if an alien is not asked about removability or doesn't concede removability, so long as the specific facts contained in the NTA are conceded to and admitted by the alien. If there are no further questions at this time, the government rests on its briefs. I have nothing further. Thank you very much, Mr. Zeitler. Thank you. Mr. Durbin, you get the last word. Your Honor, just a couple points in rebuttal. The importance of the concession of removability here is not just an academic exercise. What it serves to do in theory and would have served to do here is signal to the unrepresented alien that the pleading stage is closed, that the IJ is satisfied that the fact of removability has been established as multifactional and a legal matter at the pleading stage, and that they're going to proceed now to the relief phase. If you look at the section of the transcript where the IJ runs through the pleading without referring to the alien's rights or the NTA itself, the very next thing that happens after he asks Mr. Zamora to plead to the charges is Mr. Zamora immediately asked to see the evidence against him. The IJ concedes, I don't have any. All I have is your admissions. And Mr. Zamora says, all I've seen is the NTA. What else is there? Again, the IJ says, I don't have anything else. So it's simply not the case, as in Perez-Mejia here, that the represented alien in that case didn't press DHS to develop the record at all and clearly understood with counsel at that point that the pleading stage was done. But he was warned, was he not, that he did not have to concede any of the allegations in the NTA. That's part of the warnings that he was given, which you don't dispute were accurate. That's correct. At the hearing two weeks prior at the video conference hearing, that was one of the warnings that he was given. And our point here is that, again, when you're dealing with a pro se alien, and it's really, to be clear, this isn't really not just a due process issue or really not even primarily a due process issue. Well, it has to be, doesn't it, in order for us to afford relief? We have to find there was a due process violation. Not necessarily, Your Honor. I mean, the governing statute and regulation here that lays out the government's burden of proof and under 1240.10c, which is the regulation, it requires not only the admission to the NTA but also the concession of removability before moving on and closing the plea. But assuming that we disagree and decide that the regulation was complied with, the only argument you've got left, which I thought I heard you make in your opening remarks, was a due process violation. That if we have an unrepresented alien, he needs to be re-advised of those warnings immediately before the admissions are elicited from him. That's correct, Your Honor. And not to belabor that point too much, but it's really the cumulative effect of that absence of a contemporaneous explanation along with the failure to at least ask for a concession of removability as a matter of law, as the regulation seems to require. Which would be a due process violation. It would also be a violation of the regulatory framework, Your Honor. If we find the regulation violated. Correct. Okay, correct. I understand your position. Very good, very good. And really, from a policy perspective, it helps to ensure that with all of the recent case law regarding aliens admissions, and the spectrum really runs from S. Young on one end to Farragon Lopez on the other, it really is an opportunity to make a clean distinction as to what needs to happen for a pro se alien to make sure that those testimonial responses are reliable and are fair. Thank you. Thank you, Mr. Zaitlin. Thank you. The case just argued is submitted. Mr. Durbin, we especially want to thank you for taking this pro bono appointment. Thanks very much. 07-99019 Ibarra v. McDaniel. Each side will have 30 minutes.
judges: Silverman, Tallman, Clifton